tion of his person. But even a reservation of such right would have been unavailing. In Mahaney v. Penman, 4 Duer, 603, the court said, quoting from Granger v. Schwartz, 11 Leg. Obs. 346:

"The voluntary appearance of defendants under this section [referring to section 139 of the Code of Procedure, which was identical with the present section 424, above quoted] has the same effect as a service of a summons on them on the day of the appearance would have had. The clause referred to takes away, then, the right to appear with reservation of an objection to the jurisdiction, when such objection is purely personal."

The appearance in this action was of the most formal and general character; but, had it been less so, it would have been sufficient to give the court jurisdiction, for it was held, where a defendant moved to set aside service by publication, that an indorsement by his attorneys of their names on the motion papers as attorneys for the defendant was an appearance sufficient to give the court jurisdiction. Phelps v. Phelps, 6 N. Y. Civ. Proc. R. 117, affirmed 32 Hun, 642. To avoid the effect of a waiver of jurisdiction of the person the appearance must be qualified for the sole and special purpose of raising the issue as to jurisdiction. Hankinson v. Page, 31 Fed. 184; Reed v. Chilson, supra. As the general appearance of the defendant in the action cured any defects that might have existed in the service of the summons, the appellant's own act in voluntarily coming into the action as a party has so altered the situation that a decision of his appeal will have no practical effect, and so we are not required to pass upon the questions raised by it, under well-established rules. People v. Common Council, 82 N. Y. 575; Grow v. Garlock, 29 Hun, 598; In re Woodworth, 64 Hun, 522, 19 N. Y. Supp. 525; Hansen v. Trustees, 9 N. Y. St. Rep. 726; People v. Grace (Sup.) 1 N. Y. Supp. 661. The question of costs involved in the decision below is no ground for entertaining the appeal. Assurance Co. v. Smith (Sup.) 16 N. Y. Supp. 114.

The motion to dismiss the appeal should be granted, with $10 costs and disbursements. All concur.

---

### DIEFFENBACH v. NEW YORK, L. E. & W. R. CO.

(Supreme Court, Appellate Division, First Department. May 1, 1896.)

PERSONAL INJURIES—DAMAGES.

A verdict of $25,000 for personal injuries to a strong, robust man, 28 years old, earning at the time of his injury, as traveling salesman, $3,-600 per year and expenses, is not excessive; he having at the time of the trial, three years after his injury, not recovered so as to be able to work, and there being evidence to warrant a finding that it would be several years before he would be sufficiently recovered to work, during which time he would suffer considerable pain, and be put to expense for doctors, as he had up to the trial.

Appeal from court of common pleas, trial term.

Action by William H. Dieffenbach against the New York, Lake Erie & Western Railroad Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, O'BRIEN, and INGRAHAM, JJ.

Edward R. Green, for appellant.

F. Dieffenbach, Jr., for respondent.

RUMSEY, J. On the morning of the 16th day of March, 1893, the plaintiff took passage on a train on the Erie Railroad, from Binghamton to New York. While his train stood on the track at Lackawaxen, and the plaintiff was lying in his berth in the sleeping car, the following train crashed into the car in which the plaintiff lay, tore it to pieces, and, as a result of the collision, the plaintiff was very seriously injured. He received many bruises about his head and body, and was removed from the wreck in an unconscious condition, and, after being kept a short time at the place where the accident occurred, was taken to his home, in the city of New York. He brings this action to recover damages for the injuries which he received at that accident. The action was tried in January, 1896, and the jury rendered a verdict for the plaintiff in the sum of $35,-000. After the verdict had been rendered the defendant moved for a new trial upon the ground, among others, that the damages were excessive, and the court made an order granting a new trial unless the plaintiff stipulated that the damages be reduced to $25,000, and providing that if such a stipulation should be filed the motion should be denied. The plaintiff acceded to the modification of the verdict, and the judgment was entered against the defendant for the sum of $25,000 damages, besides the costs of the action. From that judgment, and the order denying the new trial, the defendant takes this appeal.

Two or three exceptions were taken upon the trial of the action, but they are of no particular importance, and the defendant makes no point of them on this appeal. It bases its appeal solely upon the ground that the damages were excessive. That the accident occurred, as alleged by the plaintiff, through the negligence of the defendant, and that the defendant is liable to respond to the plaintiff in whatever sum shall be necessary to compensate him for his injuries, cannot be denied, and is not disputed. It appeared from the evidence that the injuries which were received were very severe. He had bruises and a wound in the back, some of the large muscles being torn from their attachment to the spine. His right arm and five of his ribs were broken, and there were serious cuts upon his legs. He was kept in the hospital for six days, and was kept in bed until about the middle of June after the accident. At the end of June he was able to go out somewhat, and hobble about with a crutch. It was practically a year before he was able to use his arm, and at the time of the trial, in January, 1896, he was still suffering severely from the injuries which he had sustained almost three years before. When the accident occurred, on the 16th of March, 1893, the plaintiff was 28 years old. He was strong, robust, healthy, and, so far as appears from the testimony, in perfect physical condition. He was employed as a traveling salesman, and was earning at the time of the accident about $3,600 a year, in addi-

tion to his expenses, which were paid by the firm who employed him. It appeared from the testimony that, from the time of the accident until the time of the trial, he had been utterly unable to do any work, or earn any salary whatever. His doctor's bills, up to the time of the trial, had amounted to upward of $1,000. These actual money losses which he had incurred up to the time of the trial, in January, 1896, were about $9,100; and the jury might properly have given to the plaintiff this sum of money to recompense him for the salary that he had lost from the time of the accident to the time of the trial, and his expenses, without taking into consideration any compensation for the suffering and pain which he had endured during all those years. In addition to that, there was considerable evidence bearing upon the question of the permanency of the plaintiff's injuries. That he had not recovered from his injuries at the time of the trial was apparent from the evidence, and was conceded upon all hands. The precise condition in which he then was, and whether or not that condition was solely the physical result of his injuries, or whether it was, to some extent, merely nervous and hysterical, caused by the fact that his nervous system had been so shaken as to induce him to imagine that he suffered more than he in fact did, was somewhat in dispute. The jury would have been authorized to find from the evidence that his condition, whatever it was, was purely the physical result of his injuries. But even if that were not so, and he was suffering from nervousness brought on as the necessary result of that accident, which caused him to exaggerate the actual physical pains and disabilities under which he labored, is a matter of no particular importance. Dr. Hamilton, who suggested that such might be the case, said that in his judgment the plaintiff was not shamming, but that he really believed his sufferings were precisely what he said they were, and that belief was caused by his nervous condition, producing hysteria which led him to exaggerate the actual troubles from which he suffered. As a matter of fact, it could make very little difference whether the pains which the plaintiff suffered were actually existing to the extent that he thought, or whether his nervous system was so affected that he believed them to exist to a greater extent than they actually did, and suffered accordingly, if the nervous condition was caused by the accident which produced the pains. In any case the plaintiff's condition was the direct result of the injuries which he received, and, so long as those injuries affected the plaintiff, the defendant was liable for their results. If the jury were satisfied that the plaintiff in good faith actually suffered as he said that he did, although that suffering may have been, to some extent, the result of nervousness, and not the necessary result of actual physical pain, so that upon the undisputed evidence the jury must have found, not only that the plaintiff had not recovered from his injuries, and was not able to work, to the time of this trial, but that some period of time must necessarily elapse before such recovery come about, even if it ever take place, there could be no doubt of the liability of the defendant for that condition, so long as it existed.

There was evidence from which the jury might have found that

the ultimate recovery would take at least five years.   Dr. Wilcox, who attended the plaintiff from shortly after the accident, testified that his condition was reasonably certain to continue for a long time.   He said that from the condition in which the plaintiff was at the time of the trial, nearly three years after the accident, it would be several years before he was reasonably better.   The precise time, he said, it would be utterly impossible to fix.   He would not be much better for three years, and probably it would be at least five years before he would be recovered.   The witness stated that the plaintiff had been improving slowly, but that his improvement had not been steady or progressive.   His testimony was corroborated by that of Dr. King, who thought that there had been no steady and progressive improvement.   He said that he believed that in the course of time the plaintiff would regain his health to such an extent as to be able to carry on some light business, which, in his judgment, would require at least two years, and perhaps five.   On the other hand, Dr. Hamilton, who was sworn as an expert on behalf of the defendant, and who had examined the plaintiff, testified to the condition in which he found him, conceding that at the time of the examination, and at the time of the trial as well, the plaintiff was still suffering, to a greater or less extent, from the effects of the injury.   Dr. Hamilton said that in his judgment the symptoms of the plaintiff, and his apparent suffering, resulted to some extent from the pendency of the action, and that he believed that as soon as the action was disposed of the plaintiff would begin to recover rapidly.   But he testified that it would be utterly impossible for him to say with any accuracy when complete recovery would take place, although he thought it might come about in six months or a year. This was the general trend of the testimony upon the subject of the permanent injury which the plaintiff had suffered.   No exception was taken to the way in which that question was submitted to the jury, and it was properly stated in the charge of the court.

The rule is well settled that in cases of this kind the plaintiff can only be allowed to recover for such permanent injuries as, in the ordinary course of nature, are reasonably certain to ensue.   Strohm v. Railroad Co., 96 N. Y. 305.   Upon that subject the expert witnesses may state what, in their judgment, is reasonably certain to be the future course of the plaintiff's disability; taking into consideration the nature of the injury, the extent of his recovery at the time of the trial, the rapidity or slowness of his recovery, the constitution of the man himself, and all those other conditions upon which a judgment of a physician is ordinarily based.   That testimony, in connection with the physical condition of the plaintiff, is to be considered by the jury; and it will be for them to say, ultimately, whether a permanent disability is reasonably certain to ensue, and, if it is not so, then how long it is probable that the plaintiff will suffer from the injuries.   When they have concluded upon that subject, the question of the amount of damages necessary to compensate him for his future suffering is entirely one for their decision. In this case the jury might have found that, while a permanent re-

covery was probable, it would take several years, at least, before the plaintiff was able to go about his ordinary avocations, and that during all that time he would be unable to earn any money, would be put to expense for doctor's bills, and would be compelled to suffer more or less pain as the result of the injuries which had been inflicted upon him. They might have found, too, that even after that time, while he would recover so far as to suffer very little pain, and be able to do some light work, he would never regain his former robust state of health, or be the man he was before. If they came to the conclusion that it would be two years before the plaintiff would be able to do any work, the actual pecuniary loss which he would suffer during that time, by his inability to earn a salary which he had been receiving before the accident, would be $7,200. In addition to that would be the expense of doctor's bills, the amount of which, of course, would be entirely uncertain. Even conceding, therefore, that the plaintiff would be able to go to work in two years from the time of the trial, his actual money loss would be over $16,000 in addition to the doctor's bills which he would be required to pay from the trial on until his recovery. In addition to that, it would have been proper for the jury to add damages for the diminution in the plaintiff's earning capacity which, it was fair to infer from the evidence, might exist after the immediate results of the accident had passed away. Besides that, it was clear that the suffering of the plaintiff had been very great. While he was not entitled to exemplary damages in the case, yet he was entitled to such a sum as would fully compensate him for those sufferings, not only from the time of the accident to the time of the trial, but from that time on until his recovery should be completed. Such damages were entirely within the discretion of the jury. They fixed the whole amount which was necessary to compensate the plaintiff for his injuries at $35,000. That sum was reduced by the trial judge, in the exercise of a wise discretion, to $25,000. We do not think, upon the case as presented here, that the verdict, as reduced, was at all excessive. The considerations which apply in such cases are laid down in the case of Brown v. Foster, 1 App. Div. 578, 37 N. Y. Supp. 502. These are the bodily injuries sustained; the pain suffered; the effect on the health of the sufferer, according to its degree and its probable duration; the expenses incidental to attempts to effect a cure, or to lessen the injury; the pecuniary loss sustained through inability to attend to a business, as to which again the injury may be temporary or permanent. If they have taken all these elements of damage into consideration, and have awarded what they deem a fair and reasonable compensation under the circumstances of the case, a court ought not, unless under very exceptional circumstances, to disturb their verdict. If the jury applied those considerations, they might well have found that $25,000 was no more than sufficient to compensate the plaintiff for his injuries, if, indeed, the greater sum at which they fixed the verdict themselves was not proper.

The judgment and order should be affirmed, with costs. All concur.